Good morning, Your Honor. Thank you. Tim Bechtold on behalf of the plaintiff appellant. I'd like to reserve a minute for rebuttal, if I may. Sure. But given that the panel has submitted the following Barrett case on the briefs, I'm guessing that you've probably made up your mind about one of these issues. So rather than beat around the bush, does the court wish to hear more about the particularized and concrete harm? I think both. Without prejudging where we would come out on either, I think you would probably agree that there are some factual differences between Daniel and Bassett. So we'd like to hear the whole nine yards from you. Well, the first thing, of course, is the factual differences is that precisely Daniel actually experienced some The difference between Bassett, of course, is there was just a simple printing of the expiration date on the receipts. But Daniel didn't lose the receipt. Daniel still had the receipt to attach to the Third Amendment complaint. She did. As you know, Your Honor, when you enter a national park, they give you a receipt. It's about six inches long, and that is your entry ticket to the park. And so the entry, of course, is a multi-day entry. So you typically, you get it and you pop it on your dashboard because every time you go through the guard sees the ticket and allows you in. So that's the situation here. So when Stephanie Daniel bought the entrance tickets, she put it on the dashboard of her car, and then when she entered and left the park for the next three days, it was stayed on the dashboard of her car. Right. So how do we know that the, I guess, let me back up. If we're just talking about the facts, does the Third Amendment complaint tell me anywhere how long it lapsed between the May 25 entrance into the park and the time that she experienced this fraud? No, the Third Amendment complaint does not stay specifically because she doesn't know, obviously, when her identity was stolen. But she does know that her credit card started to have, beginning in June, started to have fraudulent charges. There was a proximity between the park visit and the credit card theft. She just doesn't know between those two dates what might have happened. Exactly. So it was about two weeks. So we don't have that in the Third Amendment complaint. We know that the date of the Third Amendment complaint is July, sort of 13 months later, July 1, right? But the Third Amendment complaint doesn't describe this proximity of time, the temporal association that you're mentioning now. No, it just says later that her identity was stolen. So, no, it doesn't allege. So the facts are is that two weeks after she was in the park and bought her entrance is when the identity theft began. But that's, that was an exchange in discovery. So discovery went on prior to the case being dismissed, because after briefing, the parties went through discovery and then only later was the case dismissed. So is there anything else that will help me with traceability, apart from the temporal association that you're telling me was established in discovery? Well, what we don't know, of course, is who stole her identity or how it was done. Or that it had anything to do with this receipt, or any receipt. I mean, do we have anything else that tells us that? No, all we have is her bank telling her, go through receipts and see if there was something that was there. I mean, basically after her identity was stolen, her bank said, Stephanie, go through your receipts, see if there's anything that might be on any of the receipts you have where they might have printed too much. And she said, okay, I'll do that. Went through and saw, oh look, here's the court servicing. Must be that. And the bank said, well, I think you've got a case. Well, there's a difference, of course, between what you need to allege to simply have standing and get into court, and then what you need to put forward to survive motion for summary judgment. Absolutely. We have an odd situation here, where if I understand you correctly, your view is you've alleged enough for standing by making the causal or prospective allegations. But then I also hear you saying if you were on a motion for a summary judgment, which you're not, there's no other evidence that you have, or would there be? Well, we stopped discovery as soon as it was dismissed. So, you know, that was almost last year. So it's hard to say what we would be able to turn up, but we would be able to pursue it more thoroughly with the bank, for example, to find out how it was done and who went through, I mean, how they discovered the fraud, where those charges were made, that sort of thing. But we didn't do any of that. So all you're saying now is if you were to survive a dismissal based on standing, that there is additional discovery that would put you in a different posture on a motion for summary judgment. Exactly. I think the allegation and the complaint is that it was caused in part by the Park Service. And so that's the basic difference between those cases where it is just a simple printing of the expiration versus something, whereas here there has been an actual identity theft. And the jurisprudence has fallen down on both sides of the issue quite hard. Of course, the Seventh Circuit in Bormas just said, look, if Congress wanted to make it that way, they made it that way. And a couple of district courts, including Judge Waters in this case, has said Congress could not have possibly meant that. Therefore, we're going to interpret to say that they didn't. And I think what I would urge this court to do is to follow the look, the Supreme Court has instructed us we can't do the remedial work for Congress. If Congress did something, a little error in drafting, or they didn't intend what they didn't intend, that's up to Congress. And it's not up to the courts to say, well, I don't think you meant that. Well, I don't think it's a question of what did they mean. We, of course, have a very high standard on sovereign immunity. There needs to be an explicit waiver. And one thing I noticed in going through the Seventh Circuit decision is it didn't really trace the of the statute. And so when I look at the Fair Credit Reporting Act, when it starts out, we're really talking about consumer reporting agencies. And then following that, Congress added a specific provision with respect to agencies or departments of the United States. And so there was a very specific, seems to me, waiver under a section. And then the next thing we know where they're using broad terms like person. So my sense in reading all this is that we can't say, which leads you back to, well, what's the standard? So do you have any explanation for why Congress would be very explicit in adding the United States on Section UJ, but then all of its other references are to general person definition with government agency? You know, I think, Your Honor, that's exactly right. So in the 1996 amendments where they added the bit about monetary damages and they added the bit about government entity. So when they added 1681U, that's the part where they talk about whether an agency is giving information to the FBI or the COINTELPRO type stuff. But specifically in U subsection J and U subsection L, they limit there that they recognize that there's other provisions of the subchapter provide remedies. But here they say that they provide exclusive remedies just to this section. So the whole deal about whether your agencies are providing to the FBI, I think applies only to that section, to Section U. But then when you, but that section is adopted before we get the general civil liability for persons. Is that right? No, that's not right, Your Honor. What's the timing? So the 1996 amendments were the ones that added in an individual, that stuff. Right. And then when, and then later, so the original 1970 Act, I should correct that. The definition of person was from the original 1970 Act. They added in the civil damages in 1996. Right, because when they use person in the first time out, the only civil remedy is the consumer reporting, right? That's right. And so does it make sense the first time out that they're talking about a criminal penalty or remedy against the United States? I mean, that doesn't make any sense, right? Well, not necessarily, but it's not the only time that there's, that that's been put, the government has put in, you know, criminal remedies against the United States and actors of the United States. There are both civil, I mean, there are civil remedies under the original Act as well. No, okay. Would you just kind of wind back? You say it's not the first time, but is there ever a situation where we have a criminal remedy against an agency or a government as opposed to an employee? No. Okay. No, there's strictly for actors. And I've hit my time and I apologize. No problem. We'll give you some time for rebuttal. And any other questions? Thank you. Okay. May it please the court. Mark Stern for the government. I'd like to briefly start withstanding, but I want to make sure that I also get time to talk about the issue of the FCRA waiver, which is an issue of really sort of cross-cutting and great importance to the government, given the potential liabilities that are at issue. And I think my friend correctly noted that this case, unlike the Myers case in the Seventh Circuit and the Paris Baguette case in the Second Circuit, does involve an allegation of fraudulent credit transactions on a cart. So, I mean, that's right. And we recognize that. We don't think that that's enough to save this case under sort of Iqbal, Twombly pleading standards. And there are a couple of things about that. One, the plaintiff kept the receipt. And as the Seventh Circuit said in Myers, where the plaintiff also kept the receipt, that it's pretty much impossible to figure out how there could be any harm when the plaintiff actually keeps the receipt. And then if you couple that with Congress's express finding in the Debit Credit Card Clarification Act, which was relied on by both the Seventh and the Second Circuits, where Congress says, look, the failure to truncate the expiration date without anything else, experts agree this does not add to the possibility of harm. Well, it seems like, isn't it important not only that she kept the receipt, but that the merchant copy, the allegation is that the merchant copy didn't have the long number. So it's hard to imagine how anyone else would have seen this. And I'm stuck on traceability. I don't think there is possible traceability. Well, opposing counsel argues that there's a close temporal association. And I don't see it in the Third Amendment. It's a couple of months. And I don't see it in the Third Amendment complaint. But, counsel, if I could finish my question. I'm so sorry, Your Honor. So the question is, it's not proximate causation that has to be shown. It can't be just an assertion. It can't be just conclusory. So what's the best measure we've got for traceability? What do they have to show? I mean, I think that if, I mean, I don't, it's hard for me, particularly given Congress's the lack of harm that results from the printing of the expiration date sort of per se, as opposed to everything else, I'm not sure what it would be. But here, the First Amendment complaint does, and I don't know whether it's been superseded, you know, in that respect. The First Amendment complaint says that it was a two-month interval between the time of the fraudulent charges and the printing of the receipt. There's no, plaintiff specifically says there's no other receipt. Plaintiff kept the receipt. There ought to be some, I mean, it's possible someone that one might be able to allege, look, there's circumstances in which someone has figured out how to use this credit card expiration date. There's some very close temporal sort of association to it. You know, maybe there's, you know, somebody, you know, followed. How do you ever win? I mean, I think the problem I'm having is that you're out of court before you can even get to all of this. And so, I mean, standing, you know, it's not nothing, but the allegations here, two months seems to me to be not a very long time. Well, no, Your Honor, it's not that alone. But again, if you've kept your credit card, I mean, the whole theory of this statute was that, you know, this goes back to dumpster diving and the legislative history refers to it. And the idea was, you know, from one of the old days when you'd go into a restaurant, you know, there'd be like all the extra copies that people would leave and the restaurant would throw it out into the bin and people would come and find it. And that's what Congress was getting at. Now, if you kept the only copy on which the receipt was printed out, then it's very hard to figure out how, like, any value. Have you ever been to a national park? Yes, I have, Your Honor. Okay. Well, it seems to me that whether you agree with it or not, the notion that you, you know, put it in your dashboard, you don't normally put your restaurant receipt in your dashboard. But an entrance receipt is a little bit different. That's not pled in the complaint. There's nothing about putting receipts on dashboards in this complaint. I mean, I still think there'd be plenty of difficulties after that. What if the park ranger, park service employee told the plaintiff in this case, what if discovery showed that the person that she gave her credit card or debit card to said, uh, keep this on the dashboard and the next time you drive in, we'll be able to see it and there's no problem. Your Honor, I still think that there would be a problem. I mean, Congress did find, and I think that the Second and the Seventh Circuit correctly said, when Congress finds that there is no harm resulting from the use of the expiration date without any of the other information that's supposed to be truncated, that there's no harm, that absent some significant showing to the contrary, there's not going to be any harm. And maybe some plaintiff could, we're not saying, you know. Wasn't that sort of a safe harbor period where there's no harm and then we're back to normal? I mean, it's kind of an odd situation the way you read through that. It's like, okay, well, forget the past, but now that's over onto the future. It seems to me, well, we have it on there in the statute. I'm not sure you can't plead it as a harm. Your Honor, I agree. And it is a somewhat strange statute. Um, the, on the other hand, the finding that Congress made is independent of the safe harbor. And again, we're not saying that nobody could use this, you know, in a claim for damages if they, but you'd have to do. Well, what do, what does one need as an individual to establish standing? What do you need to allege? Again, given the Congressional finding, I'm not sure, but. Well, let me see. I can't believe, I mean, so we have a really nice statute and we have great remedies and statutory damages, but sorry, nobody can sue under it. Well, Your Honor, I mean. So that somehow seems from a public policy standpoint and a practical standpoint, that can't be the answer. It's like the Hotel California. Get out of here. So I'm back to my question. What in your view would be a minimal standing allegation? I think that if, for example, someone had sort of within three hours started using, you know, the credit card, you know, sort of, or the debit card. Well, how about the allegation in what would be, and by the way, I think this is the third amendment complaint that we're working from. Not that you mentioned the first amendment complaint, but I think it's the third amendment complaint. So what if there were a fourth amendment complaint that said, in this particular case, the Park Service required me to display this thing on my dashboard. And that way it's pretty different than a restaurant receipt because they're using it as a ticket, right? Maybe, Your Honor, that's not been pled. I mean, we're dealing with the stat. Yes, but in response to Judge McEwen's question, and I think it's a question you're now getting from all three of us. Why wouldn't that be sufficient if there were sufficient temporal proximity? I still, again, I mean, I don't know that I've got a whole lot more to say than the fact that when Congress actually says that this portion of the credit card bill, just the expiration date standing alone, doesn't materially enable anyone to make false charges, that that is very significant. And maybe that can be overcome, but as a starting point, and it doesn't nullify the rest of the statute. I mean, you know, this is the same provision that talks about the truncation, you know, of the numbers, and nobody's saying that's not important. It's just this business about the expiration date standing alone, that that's the only thing we're talking about. And that's why I'm sort of reluctant, given Congress's finding, to posit exactly how you could get around it. I'm willing to assume that there could be a circumstance in which you really have evidence that somehow somebody did this. But here, even if you didn't have the finding, all we have is an allegation that somebody had a receipt printed out with only the expiration date, and they kept the receipt. So if I interpret your answer correctly, if you can prove you can win, then you can get standing with respect to the expiration date. I think that's a trick question, Your Honor. No, it's a trick question. I'm just trying to interpret what you're saying. No, I appreciate that, Your Honor. I was just being flipped. The, no, obviously you don't have to prove that you can win at the standing stage, and we appreciate that. We do think that you've got to do something more than to say that maybe discovery, and it's not discovery against the United States, remember. I mean, the United States isn't going to be able to add anything to say that, I mean, counsel referred to finding out more about when various transactions occurred. Now, that's something, you know, that, like, a plaintiff can do, you know, in the course of due diligence, and you come, you prepare a complaint, you know, with attachments. You show, okay, here's what I found. You don't need discovery to do that, and that's what I don't understand. There's nothing when you ask my friend what it would be that he could in the future produce. That's what he referred to. That's not something you need in discovery from the government. That's something you get. But discovery isn't, you've heard of third-party discovery, which is quite common in litigation, and so you're not stuck to discovering things from the entity that you sued, and it may well be, as Judge Kristen said, when you talk to park rangers or supervisors, they say, yeah, we tell people, leave it on the dashboard, because it's a lot easier, and we don't have to stop you every time you go through the little booth at the entrance to the national park. So, you know, we're, you're discounting discovery that hasn't taken place. He was talking about discovery that could take place down the road. Of course, you would need to get by standing to do that. Well, I guess what I'm saying is that it's under Iqbal and Twombly, if you want to come in and bring a lawsuit that you don't say, maybe this happened, I kept the receipt, but who knows, you go and you prepare your case, you have some reason to think it may, you still may lose in the end. You're not going to necessarily win because of any of this, but you have, but you've like put together like the showing that indicates some reason to think that there could be like that, that it's not just pure sort of conclusory speculation. But here, when you've kept the receipt yourself, you have a congressional finding may not be dispositive, but it is significant. And there's nothing to fill the gap, except maybe if my bank could tell me more. I think of the employment cases where something happens that someone considers an adverse action or that they take a position and then three, six, nine months go by and then you're fired. And you say, it's my belief that there's a connection between A and B in my firing. We say, well, that may be enough to get you by initial allegations, but it might not be sufficient in the end. So here we're talking about a two month gap and we're making a substantive judgment. You're asking us to make a substantive judgment that that's just to attenuate it. No, Your Honor. I was just, what I was trying to respond to is sort of, if I had to hypothesize a stronger case for standing than the one we have, I would start to put together a lot of other things. I would go, I would find out what my bank has to tell me. I would think I would have like a close temporal connection, sort of maybe like have found that where some of these charges were made and so forth. But to just come in and say that at some point afterwards, there was sort of some unidentified false charges, and that's all there is. We don't even know if the debit card like later got canceled. All we know is that there's some charges. I think you've probably exhausted your view on this subject and you probably want to say something about the sovereign immunity and the odd way the statute came together. No, I appreciate that, Your Honor. I appreciate your patience in hearing me out. And again, I apologize, Judge Christian, for cutting you off. It's very bad. I mean, as Your Honor said, this provision, the provision that refers to the United States, states, foreign governments, all units of government gets enacted in 1970. And that is not actually, though the Seventh Circuit describes that as a waiver, that's not even a waiver at that time. There's no right of damages against persons at that point. You have, you know, presumably an APA waiver, but this is not a waiver as such at all in 1970. And most of what the statute is dealing with at that point and the people who were subject to damages were the credit reporting agencies. So, you know, scroll ahead, you know, 26 years to 1996. And then Congress revamps, in a major way, this statute and adds sort of all sorts of new substantive obligations. And also, for the first time, puts in the two provisions, the two damages provisions that are at issue here. And the sort of, so there's no indication like at this point. This is the first time we have a waiver. So, yes, of course, the plaintiff is right. There's a 1970 definition. If there weren't, we wouldn't be here. So the only question is, is there, is that definition sort of like willy-nilly sort of controlling? Because unless one thinks it is, then everything tells you that Congress did not waive the immunity. I mean, we know. So you want us willy-nilly left it in? I mean, they knew it was there, counsel, so. Well, I mean, they knew it was there. They didn't think it was a waiver of sovereign immunity at that point. And so the question is, by using the term person in two provisions that do waive immunity, did Congress necessarily, inevitably import the meaning of person from earlier? And to do that, you sort of have to look, OK, we've got sort of this is an arrangement in which like the United States and states, local governments, foreign governments get subject to criminal penalties, punitive damages, all of which there's not a suggestion in the legislative history that Congress was contemplating that. The legislative history is full of references to businesses provide information to credit reporting agencies. When CBO scores the sort of, I don't think they scored the final bill, but they scored three antecedent bills. They scored as having a $10 million effect on the federal government over a period of five years. And that's attributable to increased cost to the judicial system and to the cost of bringing enforcement actions. There's not the vaguest suggestion about sort of additional cost to the treasury from damages. Would immunity extend to a concessionaire? To a concessionaire. Such as, as I understand, was involved in the submitted case? Bassett? Wasn't that a? Well, Bassett wasn't a suit against the government. But there are a lot of examples where there's a concessionaire in a national park. So what about that? No, if it's the government, I mean, if you're suing the government as the government, you know, then you have sovereign immunity. I mean, that's the case under the Federal Court Claims Act. Does the answer to Judge Calkins' question, no? I mean, the answer is, I mean, in Bassett, well, I mean, I thought in Bassett itself, there's no government entity. I'm just changing the hypothetical. Put a concessionaire in any national park you want to pick. Okay, and if the concessionaire is like not a private contractor and is actually the government, then the answer is, no, it's covered by the same immunity provision. But normally a concessionaire in the Park Service and others, as I understand those contracts, is those are independent third party contractors that run ERA or NRA, whatever they call them, services. They run restaurants and they run other things as independent contractors, not as the government, correct? That would be my understanding, Your Honor. We don't have that in front of us. Right, now that would be my understanding. And again, I'm reluctant to say something definitive without having looked at it, but I would have no reason to think that those people would... It wasn't a trick question. Oh, yeah, no. I'm just trying to follow up. Yeah, no, I mean, it's when, you know, it's when it's in the same way if you were suing, you know, under the Federal Court Claims Act, you, you know, a lot of times what you're an independent contractor and they're not covered by the Tort Claims Act. You've answered the question. Right. Sorry, Your Honor. So you've got sort of a total absence of reference. You've got an expectation that this isn't going to add a lot on to the sort of to the federal government's budget concerns. And all this is in very marked contrast to the Privacy Act because there already is a sort of handling of information. And as we discussed in our brief, we give an example of how like one of the same like sort of providing of incorrect information to a credit reporting agency, the difference between the outcomes under the Privacy Act and under FCRA. Under the Privacy Act, you can get an action for injunctive relief if the government fails to correct records after you ask it to. And only in an extreme case of willful behavior could you get damages. And under FCRA, for the same thing, you get damages just upon a showing of negligence and you do it and you get it sort of there's sort of two different stages at which you can sue for damages. So what is UJ or Section U-Parent J? Where do you think that fits in to this discussion? I mean, I think that the district court, you know, correctly noted that that was enacted also in 1996 and in that one which deals sort of specifically with the federal government and it contains its own specific damages provision. And again, I mean, like it's just one of many data points that tells you that like in that one, Congress did exactly what you would expect it to do when it's waiving the immunity of the United States. And there's no criminal in that section, correct? Just punitive damages. Right, in very specified circumstances, yes. And again, another sort of strange aspect of this is that this 1996 legislation, the Fair Credit Reporting Act, you know, fundamental changes come two months after the Supreme Court's decision in Seminole Tribe, which I mean, I can remember Seminole Tribe and what a sort of big deal that was at the time where Congress had said or the Supreme Court had said Congress cannot waive state immunity for damages, you know, under the Commerce Clause. And, you know, but two months later, if like this really is designed to make sort of state all these governmental units subject to damages, Congress would have enacted a statute that was unconstitutional on arrival. I mean, now we can say, well, you know, so what? It's unconstitutional, so there was no problem. But again, one would have thought that in the wake of Seminole Tribe, Congress would not have cavalierly just enacted a statute that purported to subject states to punitive and compensatory and statutory damages, you know. But again, it's just, there's just, you know, data point after data point after data point that tells you that this can't be the case. You want to wrap it up? We've given you quite a bit of extra time at this point. Right. You've been very generous. The only thing I would say is that the cases that we cite in the brief make clear that the Court is not bound by that 1970 original language, the Supreme Court's employees case, Library of Congress versus Shaw, other cases that we cite. And again, I appreciate the Court's patience and its generosity with its time. Thank you. Mr. Bechtol, we'll give you some additional time here. We'll give you three minutes rebuttal if you need it, or if you need a little more, you can tell me, because we were overly generous with the government here, because we wanted to get to both issues. Thank you, Your Honor. Just, I will address first the notion of what suffices under Iqbal, basically. And so, Your Honor, at the time this complaint was filed, the state of the law is not what it is today. And so at that time, you know, in most of the United States, a simple allegation of a statutory violation with the statutory damages sufficed. There wasn't the subsequent, you know, judicial decisions about that a simple printing of the receipt was not sufficient. So the, you know, even this year, earlier this year, the two District of Arizona cases are exact opposite points on that, whether or not it was sufficient just to have the receipt for a statutory violation. So, Your Honor, at the time of the complaint, it was the simple allegation that there was a statutory violation and it caused, and so far as we know, it's the only reason that the, that the Stephanie Daniels identity was stolen. There's no other thing that she did anywhere here or there that would expose her except this. And so that's the reason, the basis for the complaint. When discovery, if you're allowed discovery at the trial level, would it be possible to whether this, in this timeframe, from the time she submits the debit card to the park service at the entrance to when the first instance of identity fraud, to establish whether that was the sole and only time that this information was printed out on a receipt? Do you think that's possible? I think it could be because we, obviously we have a record of her debit card transactions and we could recreate those. You know what my next question is going to be, why wasn't that done? Well, because at the time of the complaint was filed, the complaint was conceived to be an allegation of a statutory violation. The state of the law was different. I mean, when the complaint was filed, and it was only subsequent to that, that these issues have arisen and frankly, in briefing here. And so, I mean, had I, had I the opportunity to take advantage of the cases that have been decided in this calendar year, the complaint would look different. And obviously the preparation for the complaint would have been different. And had I had the opportunity to amend on remand, for example, those are issues that would have been added into the complaint. But I think that regardless, it'd be very, very difficult to show in a complaint that you know you're going to win. Unless you have some sort of criminal, you know, some sort of criminal case where someone has been proven guilty already. Else, how are you, how can you establish that civil liability up front? I think we all would agree that we're a long way from a short, simple statement of a claim. True story. But I, but I think. The law school rule seems to have been overtaken by events. It has. But regardless, I think that I've, in the complaint, it is alleged that, that the, her, the theft of her identity was caused in part by the Park Service printing the receipt. And I think how they printed the receipt is something, you know, in discovery we found out that they, they brought back some old machines that they weren't using for a while and hadn't had them reprogrammed. And therefore, you know, they started printing receipts. I mean, the receipts started printing these expiration dates again. You know, things like that. And, you know, where they, where that information went, you know, those, that's information I don't know. We haven't figured that out in discovery, what the Park Service was doing with, you know, with their version of the receipts. So those are issues that we don't know about. But their version of receipt didn't have the other number on it, right? The merchant copy wasn't, didn't violate the statute, as I understand it. Well, I've never seen them. That came out in briefing here. It didn't come out, you know, in discovery before. There's a lot that, there seems to be a lot of that going around. Is, is, does the third amended complaint allege that there was just a two month delay? I didn't see it in the third amended complaint. It seemed to be something the government's not really contesting in the briefing. But I didn't see it there. But I don't want to catch you off guard. I, I frankly don't. You don't remember, that's fine. But regardless, the, it, it would seem an impossible standard. I mean, I think it, I think this, the complaint as it stands meets the Iqbal standard. I'm not sure I can, sure I can prove that I'm going to win in a complaint. And regarding the waiver of sovereign immunity, I think it's important, two things, is that the 1996 amendments added both section U and also added the, the, the dollar damages. They did it at the same time. And they didn't, I mean, they didn't bother changing it. And when later, when they, when they did the, the receipt clarification act, remember, that was just a one year grace period addition. So when they, when they brought in FACTA in 2003, they, they automatically put in a three year grace period to begin with. And then the, the clarification act just added another year of grace period. But they didn't change FACTA. You know, they didn't change the whole notion that expiration dates don't matter anymore. It's still the law. It's still against the law to, to print the, the expiration dates on the receipt. And so if Congress had, you know, as, if they really meant that, that the expiration dates don't mean anything, then they should have changed the law, but they didn't. When FACTA came back into effect after the 2007, I mean, the 2008 sunset of the clarification act, the expiration dates were again illegal. And the other thing too is in the, sort of the, the parallel litig, statutory scheme under the Equal Credit Opportunity Act and the Truth in Lending Act, you know, courts have found that the Equal Credit Opportunity Act waives sovereign immunity. And it's the, I mean, it's the same as, as, as FCRA. And it's only in the Truth in Lending Act where there is an express, explicit preservation of immunity. So the same, the same sort of situation exists in, in, in the Fair Credit Reporting Act as it does in the Equal Credit Opportunity Act. And courts don't seem to have any problem finding that there's a waiver of sovereign immunity there. But here, you know, it's, it's the Bormas line, which is similar to the Equal Credit Opportunity Act findings like, well, I don't see it, so it's a waiver. And, you know, unless, I think that if Congress had wanted immunity, and then, and remember, Congress hasn't done anything since Bormas. You know, Congress has had the opportunity to put it in there and they haven't. So maybe Congress is okay with it. And, you know, if, you know, given the, the, the, I mean, given the, we have to assume that Congress knew what they were doing. I mean, we can second guess, guess them all we want. But the, I think the plain fact is, is they put the language in there. The courts have enforced that language. And so far, there's, there's only the Seventh Circuit has been there. And Congress hasn't done anything to, you know, to rescind it or to change it. Thank you. Any other questions? Thank both of you for arguments. Very interesting legal issues here. The case of Daniel versus the National Park Service is submitted and we're adjourned. Thank you.
judges: Hawkins, McKeown, Christen